**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| United States of America, ) | |
| ) | **ORDER DENYING MOTION TO** |
| Plaintiff, ) | **REDUCE SENTENCE** |
| ) | |
| vs. ) | Case No. 3:17-cr-208 |
| ) | |
| Clifton Terrell Cannon, ) | |
| ) | |
| Defendant. ) | |

Before the Court is Defendant Clifton Terrell Cannon's motion for "18 U.S.C. 3582 'Compassionate Release'" filed on June 16, 2020. Doc. No. 124. The Government responded in opposition to the motion on June 30, 2020. Doc. No. 126. Cannon seeks a reduction in his sentence to time served based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 ("FSA"). For the reasons below, the motion is denied.

**I.   BACKGROUND**

On September 21, 2017, the grand jury returned a three-count indictment against Cannon. Doc. No. 1. The indictment charged Cannon with (1) conspiracy to possess with intent to distribute and distribute a controlled substance resulting in serious bodily injury, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; (2) distribution of a controlled substance resulting in serious bodily injury, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (3) distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Id. On January 9, 2019, Cannon pleaded guilty to all three counts pursuant to a plea agreement.[1] Doc. No. 100.

---

[1] In exchange for Cannon's guilty pleas, the Government agreed to withdraw a previously filed certification under 21 U.S.C. § 851 "for all of the defendant's felony drug offenses that might have otherwise qualified" and subjected Cannon to a mandatory minimum of life imprisonment. Doc. No. 96, ¶ 17(c); see also Doc. No. 14.

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office included the following unobjected-to description of the offense conduct:

> 5. Between 2014 and 2015, the defendant, Clifton Cannon, was charged in two separate North Dakota offenses, both involving the distribution of controlled substances (e.g. heroin, cocaine, methamphetamine, and hydromorphone). Ultimately, those criminal offenses resulted in the removal of three minor children from the care of the defendant and his girlfriend, Tiffany Valnes. The defendant was convicted and served time in custody. In February 2017, Mr. Cannon was released to the community, and he moved into a residence in North Dakota with Ms. Valnes. After his release, Child Protective Services provided an opportunity for Ms. Valnes and the defendant to resume parental responsibilities for their children under the stipulation that Ms. Valnes and the defendant show sobriety and stability. Unfortunately, Ms. Valnes had fallen behind on bills while the defendant was in custody, and the household was in disarray.
>
> 6. To try [to] resolve the financial issues in the household, the defendant began distributing drugs. Specifically, he obtained and sold heroin and hydromorphone in North Dakota. The defendant typically sold one-point (.1 gram) quantities of heroin for around $50 and half-gram quantities for $150. The defendant sold 4 milligram and 8 milligram hydromorphone tablets for $20 and $40 per tablet. The defendant obtained heroin and hydromorphone from various sources, located in Fargo, ND, Alexandria, MN, and Minneapolis[,] MN.
>
> 7. On June 17, 2017, Mr. Cannon distributed one-point of heroin to [J.P.] for between $30 and $50 cash. After purchase, [J.P] intravenously injected a portion of the heroin, then travelled to a nearby gas station. At the gas station, she injected an additional quantity of heroin. Shortly thereafter, bystanders observed [J.P] collapse in the parking lot of the gas station. Emergency medical services were contacted and prior to arrival, a bystander began providing CPR to [J.P.] Eventually, an ambulance arrived, and medical staff administered a dose of NARCAN to revive [J.P.] She was transported to a hospital for further medical treatment.
>
> 8. Later that day, law enforcement officers arranged for a controlled purchase of heroin from Mr. Cannon. During the controlled purchase, a confidential informant purchased a half-gram quantity of heroin from Mr. Cannon. Following the controlled purchase, a probation search was conducted at Mr. Cannon's residence. No additional drugs were found during the search, but $800 cash was seized. The defendant was arrested and criminally charged in North Dakota. He remained in state custody until execution of the federal arrest warrant on September 25, 2017.

Doc. No. 106, ¶¶ 5–8.

On April 18, 2019, Cannon appeared before this Court[2] for sentencing. Doc. No. 109. The Court adopted the PSR without change. Doc. No. 113, p. 1. With a total offense level of 41 and a criminal history category of IV, Cannon's advisory guideline range was 360 months to life imprisonment. Id. The Court sentenced Cannon to 360 months' imprisonment on Counts 1 and 2 and 240 months' imprisonment on Count 3, all to be served concurrently. Doc. No. 112. Cannon did not file a direct appeal, but he does have a pending 28 U.S.C. § 2255 motion. See Doc. No. 123.

The Bureau of Prisons ("BOP") placed Cannon at FCI McKean. Now 32 years old, Cannon has a projected release date of March 9, 2044. Cannon asserts the following medical concerns: "an asthmatic patient with high blood pressure, high cholesterol, close to having diabetes, hypertension, liver function elevated, TSH low, A1C elevated, black-outs 1-2 times per month with headaches." Doc. No. 124, p. 1 (cleaned up).

On April 22, 2020, Cannon submitted a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to the warden at FCI McKean. Doc. No. 126-1. The warden denied the request on April 27, 2020. Doc. No. 126-2.

## II. DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). As one narrow exception to that rule, a court "may reduce the term of imprisonment" when "extraordinary and compelling reasons" exist and the "reduction is consistent with applicable policy statements issued by the Sentencing

---

[2] The Honorable Karen E. Schreier, District Judge of the United States District Court for the District of South Dakota, sitting by designation.

3

Commission."[3] 18 U.S.C. § 3582(c)(1)(A)(i). The 18 U.S.C. § 3553(a) factors also must support the reduction. Id. The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### A. Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Because 30 days have lapsed since Cannon submitted his request for compassionate release, the Court will proceed to the merits.

### B. Extraordinary and Compelling Reasons

The compassionate release statute does not define what constitutes "extraordinary and compelling reasons." Instead, Congress has dictated that the Sentencing Commission, through a policy statement, "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including . . . a list of specific examples." 28 U.S.C. § 994(t). To meet its statutory obligation, the Commission has promulgated USSG § 1B1.13. The policy statement itself largely mirrors the compassionate release statute's language. See USSG § 1B1.13(1)-(3).

---

[3] In lieu of extraordinary and compelling reasons, the statute also permits a sentence reduction where a defendant is at least 70 years old and certain additional conditions are met. See 18 U.S.C. § 3582(c)(1)(A)(ii). Cannon is 32 years old, so this avenue for relief is foreclosed.

4

More pertinent here is Application Note 1 to the policy statement.  So long as a defendant does not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," the Application Note delineates four instances that demonstrate extraordinary and compelling reasons for compassionate release.  USSG § 1B1.13(2); id. app. n.1.  The first three circumstances set out in subdivisions (A) through (C) pertain to a defendant's medical condition, age, or family circumstances, respectively.  See id. app. n.1(A)-(C).  Subsection (D)—the catch-all provision—authorizes a sentence reduction when "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than . . . the reasons described in subdivisions (A) through (C)."  Id. app. n.1(D).  Cannon's motion appears to rest on subdivision (D)'s catch-all provision.[4]

The Sentencing Commission, currently lacking a quorum, has yet to update § 1B1.13 since Congress amended § 3582(c)(1)(A).  The policy statement still contemplates a motion for compassionate release originating solely from the BOP Director—clearly no longer the case.  See USSG § 1B1.13.  Seizing on this vacuum, several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges.  See, e.g., United States v. Fox, Criminal No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); United States v. Beck, 1:13-CR-186-6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019); United States v. Cantu, Criminal Action No. 1:05-CR-458-1, 2019 WL

---

[4] When raising concerns about being at a higher risk for serious illness due to COVID-19, some inmates in compassionate release motions filed in this Court and in other courts have relied instead or additionally upon subdivision (A), arguing that they have a "serious physical or medical condition . . . that substantially diminishes [their] ability . . . to provide self-care within the environment of a correctional facility" in light of the circumstances created by the COVID-19 pandemic.  See USSG § 1B1.13, app. n.1(A)(ii)(I).  The Court would come to the same conclusion in this case if it were to consider the criteria in subdivision (A).

2498923, at *5 (S.D. Tex. June 17, 2019). Other district courts disagree. See, e.g., United States v. Lynn, CRIMINAL NO. 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019); United States v. Gutierrez, No. CR 05-0217 RB, 2019 WL 2422601, at *2-3 (D.N.M. June 10, 2019); United States v. Shields, Case No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019). Indeed, this Court recently determined that § 3582(c)(1)(A)'s plain language mandates adherence to the policy statement as written. United States v. Rivera, Case No. 1:16-cr-00239, Doc. No. 61 (D.N.D. Nov. 25, 2019). Nevertheless, even assuming arguendo that the Court possesses the authority to find other extraordinary and compelling reasons for purposes of this motion, Cannon does not meet the burden to demonstrate that such reasons exist here.

While sympathetic to Cannon's concerns regarding the effects of COVID-19 in the federal prison system, the Court does not find that his circumstances clear the high bar necessary to warrant a sentence reduction. As the Third Circuit Court of Appeals recently commented, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release. . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). District courts have concluded similarly. See, e.g., United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. . . .").

Cannon has not sufficiently demonstrated that he is currently at higher risk for severe illness if he were to contract COVID-19. It is true that the Centers for Disease Control and Prevention has identified moderate-to-severe asthma, diabetes, and hypertension as underlying conditions that do lead or may lead to a higher risk for severe illness. See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/

6

coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 22, 2020). However, Cannon has largely not substantiated these three conditions.[5] Cannon's medical records lack any mention of asthma and consistently note no respiratory complaints. See Doc. No. 127, pp. 3, 9, 22, 55, 87. While Cannon's lab tests have yielded mildly elevated A1C levels on multiple occasions, Cannon has not been diagnosed with diabetes, he has consistently denied having diabetes, and his levels consistently have fallen into the prediabetic range. See id. at 3, 9, 18, 22, 33, 42–44, 47–48, 51, 55, 81, 87, 98, 102, 112, 122. The medical records list multiple blood pressure readings from 2019 and 2020 that indicate elevated blood pressure or hypertension; however, it appears that at least a few of these readings are connected to a surprise wisdom tooth extraction that caused some anxiety and Cannon's use of K2 (synthetic marijuana) while in prison. See id. at 24–25, 37–39, 42, 47–48, 72–73, 94–95, 119. Moreover, the records consistently note no history of hypertension, and an April 20, 2020, doctor's note states that Cannon's blood pressure has stabilized. See id. at 3, 9, 22, 31, 34–35, 42–44, 51, 55, 87. Even if there were some evidence in the record of these relatively common conditions among federal inmates, Cannon has not shown that the conditions cannot be adequately treated by the facility. See United States v. Ramos, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *2 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release for a 41-year-old chronic and severe asthmatic where medical records showed no new asthma attacks and condition being treated by BOP); United States v. Gileno, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying

---

[5] Cannon's other claimed medical conditions—high cholesterol, elevated liver function, low TSH (thyroid-stimulating hormone), blackouts, and headaches—are supported to some extent by the medical records but do not qualify under the CDC criteria. The Court also notes that the records suggest some connection between Cannon's issues with blackouts and headaches and his illicit use of K2 while in prison. See Doc. No. 127, pp. 24–28, 31–33, 37–39.

7

compassionate release for a defendant with high blood pressure, high cholesterol, asthma, and allergies who had not shown that the facility was specifically unable to adequately treat his conditions). At 32 years old, Cannon's age also does not independently place him among those at higher risk for severe illness. See Older Adults, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 22, 2020).

Further, the BOP has undertaken an extensive response effort to prevent and mitigate the spread of COVID-19 in its facilities, including screening, visitation, and social distancing measures. See BOP Implementing Modified Operations, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 22, 2020). These measures evidently have been successful at FCI McKean to this point, with the facility having yet to report even a single case of COVID-19 in either an inmate or staff member. BOP: COVID-19 Update, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited July 22, 2020). In sum, Cannon's generalized assertions regarding the risk of contracting COVID-19 while incarcerated do not present an extraordinary and compelling reason for a sentence reduction.

    **C.**    **Danger to the Safety of Others or the Community**

As previously mentioned, a reduction in sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). USSG § 1B1.13, the relevant policy statement, contains a requirement not directly stated in § 3582(c)(1)(A): that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). "In making this determination, courts should consider '(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics

8

of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." United States v. Hylander, No. 18-CR-60017, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (quoting 18 U.S.C § 3142(g)).

Cannon has not met his burden to show that he is not a danger to the safety of any other person or the community. At sentencing on the instant offense, the Court found that Cannon had a criminal history category of IV. Doc. No. 106, ¶ 39. One of Cannon's prior convictions was for terrorizing, an offense described by the PSR as follows: "Police reports indicate the defendant threatened to kill his girlfriend, [T.V.] During the interaction with law enforcement, [T.V.] was observed with a black eye and a large bump on her head." Id. ¶ 31. His probation in that case was revoked for multiple violations. Id. Cannon also committed the instant offense while under criminal justice sentences for multiple drug convictions, id. ¶ 38, and his pretrial release in this case was revoked after a series of violations, Doc. No. 56. And as previously mentioned, Cannon has continued to use illicit substances while in BOP custody, leading to a disciplinary report.[6] See Doc. No. 126-4.

### D.    18 U.S.C. § 3553(a) Sentencing Factors

Lastly, the Court must "consider[] the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) requires the Court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

---

[6] Cannon denied being under the influence of any substance during this April 12, 2020, incident, but prison medical staff found that his "erratic behavior and physical signs [were] consistent with being under the influence of an unknown substance," and he had previously reported K2 use in other instances. See Doc. No. 126-4; Doc. No. 127, p. 33, 39, 47.

9

>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>> (B) to afford adequate deterrence to criminal conduct;
>
>> (C) to protect the public from further crimes of the defendant; and
>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [by the Guidelines]—
>
> . . . .
>
> (5) any pertinent [Sentencing Commission] policy statement—
>
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court finds that the § 3553(a) factors strongly weigh against release in this case. Cannon was sentenced just over 15 months ago to a total of 30 years of imprisonment. As such, accounting for credit for time served and potential future Good Conduct Time, his projected release date is still over 23-and-a-half years away. Release at this time would therefore create a substantially unwarranted sentencing disparity and fail to account for the seriousness of the instant offense in which the victim suffered a serious drug overdose that required CPR, the administration of Narcan, and hospitalization. The need for deterrence and community protection also point against a sentence reduction in this case. So too does the need for rehabilitation of the defendant, as he has had little time to take advantage of the BOP's programming and treatment opportunities,

and he was recently disciplined for the incident of suspected K2 use. In short, the applicable § 3553(a) factors, taken as a whole, favor continued incarceration.

### III.     CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, Cannon's motion to reduce sentence (Doc. No. 124) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 23rd day of July, 2020.

>                    */s/ Peter D. Welte*
>                    Peter D. Welte, Chief Judge
>                    United States District Court